## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| Estate of Sabah Salman Hassoon; | ) | CIVIL ACTION |
| Hamzia Unbaid Alwan; | ) | NO. 1:09 cv 618 |
| Sajjad Sabah Salman; | ) | |
| Mohammed Sabah Salman; | ) | CIVIL COMPLAINT |
| Ali Sabah Salman; | ) | JURY DEMAND |
| Estate of Azhar Abdullah Ali; | ) | |
| Ibtisam Abbass Jorrey; | ) | |
| Sajjad Azahar Abdullah; | ) | |
| Emad Azhar Abdullar; | ) | |
| Sajah Azhar Abdullar; | ) | |
| Estate of Nibrass Mohammed Dawood; | ) | |
| Safeen Hameed Ahmed Qadir | ) | |
| Estate of Akram Khalid Sa'ed Jasim | ) | |
| Khalid Sa'ed Jasim | ) | |
| Shatha Khudhir Hassan Ali | ) | |
| Zahra'a Khalid Sa'ed Jasim | ) | |
| Ali Khalid Sa'aed Jasim | ) | |
| Sarah Khalid Sa'aed | ) | |
| Waleed Sa'ed Jasim | ) | |
| Estate of Suhad Shakir Fadhil | ) | |
| Shakir Fadhil Ali | ) | |

| | |
|---|---|
| Maulood Mohammed Shathir Husein | ) |
| | ) |
| Husam Hasan Jaber | ) |
| | ) |
| Estate of Khalis Kareem Ali Al Qaysi | ) |
| | ) |
| Hikmat Ali Husein Al Rubae | ) |
| | ) |
|      Plaintiffs, all residing in Baghdad, Iraq at addresses that cannot be disclosed for safety and security | ) ) ) ) |
| | ) |
|    v. | ) |
| | ) |
| Erik Prince<br>1650 Tysons Boulevard<br>McLean, VA 22012 | ) ) ) |
| | ) |
| Samarus CO LTD<br>1650 Tysons Boulevard<br>McLean, VA 22012 | ) ) ) |
| | ) |
| Prince Group LLC<br>1650 Tysons Boulevard<br>McLean, VA 22012 | ) ) ) |
| | ) |
| Xe Services LLC (formerly EP Investments LLC and d/b/a Blackwater Worldwide)<br>1650 Tysons Boulevard<br>McLean, VA 22012 | ) ) ) ) |
| | ) |
| Greystone LTD<br>1650 Tysons Boulevard<br>McLean, VA 22012 | ) ) ) |
| | ) |
| Total Intelligence Solutions LLC<br>1650 Tysons Boulevard<br>McLean, VA 22012 | ) ) ) |
| | ) |
| Xe Services LLC<br>850 Puddin Ridge Road<br>Moyock, NC 27958 | ) ) ) |
| | ) |
| U.S. Training Center, Inc. (formerly Blackwater Lodge and Training Center, Inc.)<br>850 Puddin Ridge Road | ) ) ) |

| | |
|---|---|
| Moyock, NC 27958 | ) |
| | ) |
| GSD Manufacturing LLC (formerly Blackwater | ) |
| Target Systems) | ) |
| 850 Puddin Ridge Road | ) |
| Moyock, NC 27958 | ) |
| | ) |
| Blackwater Security Consulting LLC | ) |
| 850 Puddin Ridge Road | ) |
| Moyock, NC 27958 | ) |
| | ) |
| Raven Development Group LLC | ) |
| 850 Puddin Ridge Road | ) |
| Moyock, NC 27958, | ) |
| | ) |
| Defendants | ) |
| | ) |
| | ) |

# FIRST AMENDED COMPLAINT

Plaintiffs Estate of Sabah Salman Hassoon, Hamzia Unbaid Alwan, Sajjad Sabah Salman, Mohammed Sabah Salman, Ali Sabah Salman, Estate of Azhar Abdullah Ali, Ibtisam Abbass Jorrey, Sajjad Azahar Abdullah, Emad Azhar Abdullar, Sajah Azhar Abdullar, Safeen Hameed Ahmed Qadir, Estate of Akram Khalid Sa'ed Jasim, Khalid Sa'ed Jasim, Shatha Khudhir Hassan Ali, Zahra'a Khalid Sa'ed Jasim, Ali Khalid Sa'aed Jasim,  Sarah Khalid Sa'aed, Waleed Sa'ed Jasim, Estate of Suhad Shakir Fadhi,  Shakir Fadhil Ali, Maulood Mohammed Shathir Husein, Husam Hasan Jaber, Estate of Khalis Kareem Ali Al Qaysi, Hikmat Ali Husein Al Rubae (hereinafter referred to as "Plaintiffs") hereby allege as follows:

# JURISDICTION AND VENUE

1.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question); 28 U.S.C. §1332 (diversity jurisdiction); 28 U.S.C. §1350 (Alien Tort Statute); 28 U.S.C. §1367 (supplemental jurisdiction); and 18 U.S. C. §1964 (Racketeer

Influenced and Corrupt Organizations).

3.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(3), §1391(b)(2) and18 U.S. C. §1965(a).

## THE PARTIES

## IRAQI MEDIA SHOOTING VICTIMS

3.     Plaintiff is the Estate of Sabah Salman Hassoon.  Before being shot by Xe-Blackwater, Sabah Salman Hassoon was a 38-year old father of three who worked as a security guard for the Iraqi Media Network.

4.     Plaintiff Hamzia Ubaid Alwan is the widow of Sabah Salman Hassoon.  She is a 45-year old mother now raising three young children without her husband.

5.     Plaintiffs Sajjad Sabah Salman, Mohammed Sabah Salman, and Ali Sabah Salman are the three sons forced to grow up without their father.  Now 12, 11 and 10 years old, they have suffered, and continue to suffer greatly, as a result of Xe-Blackwater's misdeeds.

6.     Plaintiff is the Estate of Azhar Abdullah Ali.  Before being shot by Xe-Blackwater, Azhar Abdullah Ali was a 33-year old father of three who worked as a security guard for the Iraqi Media Network.

7.     Plaintiff Ibtisam Abbass Jorrey is the widow of Azhar Abdullah Ali.  She is a 29-year old mother now raising three young children without her husband.

8.     Plaintiffs Sajjad Azhar Abdullah; Emad Azhar Abdullah; and Sajah Azhar Abdullah are the three children forced to grow up without their father.  Now 9, 7 and 4 years old, they have suffered, and continue to suffer greatly, as a result of Xe-Blackwater's misdeeds.

9.      Plaintiff is the Estate of Nibrass Mohammed Dawood.  Before being shot by Xe-Blackwater, Nibrass Mohammed Dawood was a 25-year old who worked as a security guard for the Iraqi Media Network.

## APRIL 2008 BEATING VICTIM

10.      Plaintiff is Safeen Hameed Ahmed Qadir.  He is a 35-year old photographer who works for the media.  He was badly beaten by Xe-Blackwater.

## JULY 2007 SHOOTING VICTIMS

11.       Plaintiff is the Estate of Akram Khalid Sa'ed Jasim.  Akram was nine years old when he was killed by Xe-Blackwater shooters.

12.      Plaintiff Khalid Sa'ed Jasim was father of Akram Khalid Sa'ed.  Xe-Blackwater shooters shot him in his hand and leg.

13.      Plaintiff Shatha Khudhir Hassan Ali was the mother of Akram Khalid Sa'ed.  Xe-Blackwater shooters shot her in the back.

14.      Plaintiff  Zahra'a Khalid Sa'ed Jasim was the 3-months old sister of Akram Khalid Sa-ed.  Xe-Blackwater shooters shot her in the face.

15.      Plaintiff Ali Khalid Sa'aed Jasim was the brother of Akram Khalid Sa'ed.  Xe-Blackwater shooters shot at him.

16.      Plaintiff Sarah Khalid Sa'aed was the brother of Akram Khalid Sa'ed.  Xe-Blackwater shooters shot at her.

17.      Plaintiff Waleed Sa'ed Jasim was the 30-years old uncle of Akram Khalid Sa'ed.  Xe-Blackwater shooters shot him in the back and knees.

**FEBRUARY 2007 SHOOTING VICTIMS**

18.    Plaintiff is the Estate of Suhad Shakir Fadhil, a 37-years old female shot and killed by Xe-Blackwater shooters on February 4, 2007 when she was driving home from work in her car.

19.    Plaintiff is Shakir Fadhil Ali, the father of the deceased.   He suffered and continues to suffer from the senseless and violent slaughter of his daughter caused by Xe-Blackwater shooters.

**AUGUST 2005 SHOOTING VICTIM**

20.    Plaintiff is Maulood Mohammed Shathir Husein, a 31-year old married professor of veterinary medicine at the University of Baghdad.  He has one daughter, who was one year old when her father was shot in the leg for no reason by Xe-Blackwater shooters.

**JULY 2005 SHOOTING VICTIM**

21.    Plaintiff is Husam Hasan Jaber.  He operates a taxi cab business, earning revenue from driving a KIA minibus he owns.  On July 18, 2005, Plaintiff was driving three passengers in Baghdad when Xe-Blackwater shooters opened fire at his taxi for no reason.

**MARCH 2005 SHOOTING VICTIMS**

21.    Plaintiff is the Estate of Khalis Kareem Ali Al Qaysi.  Mr Al Qaysi was a 65- year old married father of six children.  Xe-Blackwater shooters shot Mr. Al Qaysi in the head, killing him, as he was being driven in a BMW from the Baghdad airport back to Baghdad.

22.    Plaintiff is Hikmat Ali Husein Al Rubae was another passenger being driven from Baghdad airport back to Baghdad in a BMW.    Xe-Blackwater shooters shot at Mr. Al Rubae and damaged his BMW.

**DEFENDANTS**

23.     Defendant Erik Prince is a resident of McLean, Virginia, with business offices at 1650 Tysons Boulevard, McLean, Virginia 22102, who personally and wholly owns companies known as Samarus CO LTD, Prince Group LLC and Xe Services LLC (formerly EP Investments LLC and d/b/a Blackwater Worldwide).  Mr. Price, through these companies, owns and controls the various Xe-Blackwater entities, as well as entities known as Greystone LTD and Total Intelligence Solutions LLC.

24.     Defendant Samarus CO LTD is a company wholly owned and operated by Defendant Prince.  Reasonable discovery will establish that Samarus CO LTD is located at 1650 Tysons Boulevard, McLean, Virginia 22102.

25.     Defendant Prince Group LLC is a holding company located at 1650 Tysons Boulevard, McLean, Virginia  22102.

26.     Defendant Xe Services LLC (formerly EP Investments, LLC and d/b/a Blackwater Worldwide), is a holding company managed by Prince Group LLC.  Xe Services LLC is located at 1650 Tysons Boulevard, McLean, Virginia  22102.

27.     Defendant Erik Prince, acting through a web of companies operating under the "Xe" or "Blackwater" or "Raven" or "Greystone" or "Total Intelligence" or "Samarus" names, earns billions of dollars providing mercenaries (known as "shooters") for hire.  The various Xe-Blackwater, Greystone, Samarus and Prince Group corporate entities were formed merely to reduce legal exposures and do not operate as individual and independent companies outside the control of Erik Prince.  Erik Prince personally controls all the various entities.

28.     Defendants U.S. Training Center, Inc. (formerly Blackwater Lodge and Training Center, Inc.), GSD Manufacturing LLC (formerly Blackwater Target Systems), Blackwater

Security Consulting and Raven Development Group are all located at 850 Puddin Ridge Road, Moyock, North Carolina 27958.

29.     Defendant Greystone LTD and Total Intelligence Solutions LLP are companies through which Erik Prince conducts his mercenary business.  Greystone LTD and Total Intelligence Solutions LLP are located at 1650 Tysons Boulevard, McLean, Virginia  22102.

## THE XE-BLACKWATER IRAQI MEDIA NETWORK SHOOTING

30.     On February 7, 2007, heavily-armed Xe-Blackwater employees shot and killed three men working as security guards at the rear gate of the Iraqi Media Network compound in central Baghdad -- Sabah Salman Hassoon, Azhar Abdullah Ali, and Nibrass Mohammed Dawood.  The Xe-Blackwater employees had no reason to shot these three men.

31.     Approximately 20 Xe-Blackwater employees witnessed the crimes.  Blackwater-Xe supervisors learned of the killings shortly after they occurred.  Yet Xe-Blackwater did nothing to report the shootings.  Instead, Xe-Blackwater acted, and continues to act, in conspiracy with the shooters, to evade any accountability whatsoever.

32.     Xe-Blackwater's bad acts include, among other things, refusing to identify the shooters to Iraqi authorities and destroying documents and other evidence relating to this and other Xe-Blackwater shootings.

33.     This action seeks damages sufficient to stop Xe, formerly Blackwater, in all of its various corporate incarnations, from continuing its lawless behavior.  These companies (including an Xe-Blackwater company called Falcon, which continues to operate in Iraq), are all component parts of a single private company wholly owned and personally controlled by a man named Erik Prince.  Xe-Blackwater's unjustified killings of Sabah Salman Hassoon, Azhar

Abdullah Ali, and Nibrass Mohammed Dawood are but one of a staggering number of senseless deaths that directly resulted from Xe-Blackwater's misconduct.

34.    Xe-Blackwater provides armed forces to protect Department of State personnel in Iraq.  These mobile armed forces that accompany diplomats and others in need of protection are consistently referred to by Xe-Blackwater as "shooters."

35.    Xe - Blackwater earned more than two billion dollars from the United States. The United States paid Xe - Blackwater these substantial sums based on Xe - Blackwater's misrepresentations that it was a legitimate company able to conduct itself in a lawful manner. But in fact, Xe - Blackwater operates extra-legally, providing heavily-armed mercenaries who flout the laws of this nation and the host nation, Iraq.

36.    On February 7, 2007, approximately 20 Xe-Blackwater employees in four SUVs escorted a U.S. diplomat to a meeting at the Iraqi Justice Ministry outside the Green Zone. During the meeting, Blackwater shooters took up positions on the Justice Ministry's roof.

37.    Across the street from the Iraqi Justice Ministry sits the compound of the Iraqi Media Network, a state-owned and operated enterprise, which operates newspapers, radio stations and the al-Iraqiya television station.  (The United States provides assistance to this network.)  The rear gate to the Iraqi Media Network compound sits across the street from the Iraqi Justice Ministry.  A traffic circle known as King Faisal Square separates the two compounds.

38.    The three deceased were guards for Iraqi Media Network, and were manning their guard stations on February 7, 2007.

39.    Xe-Blackwater shooters located on the roof across the street opened fire on Nibrass Mohammed Dawood, who was stationed on a balcony overlooking gate.  The  Xe-

Blackwater shooters hit him, and he fell to the balcony floor. Xe-Blackwater shooters had no reason to shoot him.

40.    Several other guards heard the shot and saw Nibrass Mohammed Dawood fall. As they ran to his side to assist him, they too came under fire from the Xe-Blackwater shooters.

41.    Azhar Abdullah Ali and Sabah Salman Hassoon were among those who ran to assist Nibrass.  Xe-Blackwater shooters shot them both as they were assisting Nibrass.

42.    The Iraqi Army commander at the site, Captain Ahmed Thamir Abood, received a phone call from the Justice Ministry telling him that the shots were coming from the Americans stationed on the roof of the Ministry.

43.    Captain Abood rushed toward the Justice Ministry, where he confronted the Xe-Blackwater shooters as they were preparing to leave.  Captain Abdood questioned them about the shootings.

44.    Xe-Blackwater personnel refused to identify who was in charge or to answer Captain Abood's questions.  They joked among themselves, giving contradictory statements regarding to whom the Captain should speak.  Instead of answering questions posed by the Iraqi military captain, Xe-Blackwater shooters loaded up their vehicles, released smoke grenades and sped off toward the Green Zone.

45.    The families later discovered from Iraqi police reports that Xe-Blackwater had been involved in the shootings, and that the shootings were described as "an act of terrorism."

46.    Xe-Blackwater failed to conduct any investigation whatsoever into the shootings.

47.    Instead, Xe-Blackwater conspired with the shooters to protect their identities from discovery and to evade any accountability.

**APRIL 2008 BEATING**

48.     On April 26, 2008, Safeen Hameed Ahmed Qadir was covering the opening of a Ford automobile branch in the Arbil province.  He began to photograph a visiting American dignitary who was being guarded by Xe-Blackwater personnel.

49.     Xe-Blackwater personnel attacked Safeen Hameed Ahmed Qadir, beating him savagely.   Plaintiff Qadir continues to suffer from the physical and mental effects of Xe-Blackwater's savage beating.

**JULY 2007 SHOOTING**

50.      On July 1, 2007, a driver named Wala'a was driving a minibus for three related families who were going to Baghdad airport to apply for passports.   The three families included (a) parents with four children, including a three-month old baby; (b) an uncle; and (c) a cousin and his wife.

51.     As the families were returning from the airport, six Xe-Blackwater vehicles, including three with turrets, surrounded the minivan and opened fire for absolutely no reason.

52.     The Xe-Blackwater shooters killed the nine-year boy.

53.     The Xe-Blackwater shooters shot the mother in the back as she bent over, trying to protect the three-month old daughter from being shot.  She was unsuccessful, as the baby was shot in the face.

54.     The Xe-Blackwater shooters hit the father and the uncle.  They shot at, but missed, the two other children.

55.     The Xe-Blackwater shooters also hit the cousin, Sadiq Ahmed Ali.  They shot at but missed his wife, Khalida Jasim Mohammed, and the driver.

56.     Plaintiffs suffered and continue to suffer from the physical and mental injuries inflicted by Xe-Blackwater.

- 11 -

## FEBRUARY 2007 SHOOTING

57.    On February 4, 2007, Suhad Shakir Fadhil, a 37-years old female was driving to her office, which was located near the Iraqi Ministry of Foreign Affairs.  Suhad Shakir Fadhil worked in media relations, including at times working within the Green Zone for the United States Agency for International Development ("AID").

58.    Xe-Blackwater shooters shot Suhad Shakir Fadhil in the head as she drove to work.  Ms. Fadhil died shortly after being shot.

59.    Xe-Blackwater shooters also severely damaged Ms. Fadhil's car.

60.    Plaintiff Shakir Fadhil Ali, the father of the deceased, suffered and continues to suffer as a result of Xe-Blackwater's murder of his daughter.

## JULY 2005 SHOOTING

61.    Plaintiff is Husam Hasan Jaber owns and operates a taxi cab business, earning revenue by driving a KIA mini-bus.

62.    On July 18, 2005, Mr. Jaber was driving three passengers in Baghdad when Xe-Blackwater shooters opened fire at the KIA mini-bus for no reason.  The Xe-Blackwater shooters repeatedly hit Mr. Jabar and his mini-bus.

63.    Although it was obvious to the Xe-Blackwater shooters and all other witnesses that Xe-Blackwater shooters had seriously wounded Mr. Jabar and damaged the KIA mini-bus, the Xe-Blackwater shooters sped off.

64.    American soldiers present on the scene assisted Mr. Jabar, entering his care to provide first aid and calling for an ambulance.

65.    Reasonable discovery likely will establish that the Xe-Blackwater shooters shot Mr. Jabar with prohibited ammunition, which explodes and causes maximum physical damage.

66.     Mr. Jabar suffered and continues to suffer from physical and mental injuries caused by the Xe-Blackwater shooters.

67.     Mr. Jabar suffered property damage to his KIA mini-bus, the source of his business revenue, as result of Xe-Blackwater shooters' unprovoked excessive use of force.

### AUGUST 2005 SHOOTING

68.     Plaintiff Maulood Mohammed Shathir Husein, a 31-year old married professor of veterinary medicine at the University of Baghdad, was being driven by a driver from the Al Eshaqi District to the Ministry of Higher Education in Baghdad.

69.     Mr. Husein's driver was approaching an American check point in the Al Taji District at the same time as three Xe-Blackwater vehicles approached the check point.

70.     A Xe-Blackwater shooter shot Mr. Husein in the leg for absolutely no reason other than to arrive at the check point ahead of Mr. Husein.

71.     The Xe-Blackwater personnel in the three vehicles clearly could tell that their colleague had seriously wounded Mr. Husein.  Yet they simply ignored the badly-bleeding Mr. Husein, and continued towards the check point.

72.     The American soldiers at the check point rushed to Mr. Husein's aid, giving him first aid and calling for help.  The American soldiers stayed with Mr. Husein, tending to his injuries, until he was able to be transported by ambulance to the Al Kadhumia hospital in Baghdad.

73.     Mr. Husein continues to suffers from the physical and mental injuries caused by the Xe-Blackwater shooting.

## MARCH 2005 SHOOTING

74.    On March 22, 2005, Messrs. Al Qaysi and Al Rubae as well as another person were picked up at the Baghdad airport by a paid driver driving Mr. Al Rubae's BMW.

75.    As the BMW traveled from the airport to Baghdad, Xe-Blackwater shooters began to fire on the BMW for no reason.

76.    Xe-Blackwater shooters shot Mr. Al Qaysi in the head, killing him.

77.    His widow and six children suffered and continue to suffer from the senseless and violent slaughter of Mr. Al Qaysi.

78.    Xe-Blackwater shooters also shot at Mr. Al Rubae, who continues to suffer both physically and mentally from the trauma of being attacked by armed shooters.

79.    Xe-Blackwater shooters seriously damaged Mr. Al Rubae's BMW.

## XE – BLACKWATER'S PATTERN AND PRACTICE OF ILLEGAL ACTIVITY

80.    Blackwater's shootings were neither the first nor the last time Xe-Blackwater murdered innocents for no reason.

81.    Xe - Blackwater has a pattern and practice of recklessness in the use of deadly force.  Xe - Blackwater has created and fostered a corporate culture in which excessive and unnecessary use of deadly force by its employees is not investigated or punished in any way. Xe - Blackwater routinely sends heavily-armed "shooters" into the streets of Baghdad with the knowledge that some of those "shooters" are chemically influenced by steroids and other judgment-altering substances.

82.    Xe-Blackwater routinely gives weapons to men known to be alcoholics or drug users.  Xe-Blackwater fails to prevent its employees from carrying their weapons when they are imbibing alcohol or using drugs.

83.    Xe – Blackwater management refused to fire or discipline mercenaries who murdered innocent Iraqis.  Mercenaries known to have committed "bad shoots" (i.e. murder) would not even be placed on the "do not use" list.  Instead, Xe – Blackwater would continue to rehire and deploy mercenaries known to have killed innocents for no reason.  Plaintiffs will show at trial a litany of illegal shootings around the globe by Xe-Blackwater.

84.    Xe-Blackwater repeatedly engages in illegal conduct.  Xe – Blackwater engages in conduct that violates the laws governing the use and sale of firearms.   Xe-Blackwater fails to track or monitor its weaponry and ammunition as is required by law.

85.    Plaintiffs will show at trial that Xe – Blackwater hired and continues to hire former military officials known to have been involved in human rights abuses in Latin American and elsewhere. Although Xe – Blackwater tries to pass itself off as a company using retired American military, the company actually recruits mercenaries from the Philippines, Chile, Nepal, Colombia, Ecuador, El Salvador, Honduras, Panama, Peru, Bulgaria, Poland, Romania, Jordan and perhaps South Africa. Xe - Blackwater hires and deploys to Iraq foreign nationals without regard for the fact that they were forbidden by the laws of their country from serving as mercenaries.

86.    Given its status as a mercenary or quasi-mercenary organization, Xe – Blackwater violates the law by seeking and accepting work from the United States government.  The Anti-Pinkerton Act, 5 U.S.C. § 1803, prohibits the United States from doing business with "[a]n individual employed by the Pinkerton Detective Agency, or similar organization."  The

legislative history of the Act makes it clear that a "similar organization" means any mercenary or quasi-mercenary organization.

## XE-BLACKWATER'S DESTRUCTION OF EVIDENCE

87.    Xe – Blackwater captured much of the illegal conduct on videotape and audiotape.  Reasonable discovery will show that Xe-Blackwater intentionally destroyed evidence relating to Xe-Blackwater's pattern and practice of wrongdoing.

88.    Reasonable discovery will show that on or about March 18, 2008, Defendants' high-level executives Messrs. Gary Jackson and Dave Jackson met with others at Xe-Blackwater (then called Blackwater) to discuss ongoing Department of Justice investigations and other legal troubles.  Reasonable discovery will show that after that meeting, Xe-Blackwater employees began to destroy documents and other evidence relating to the events at issue in this and other legal proceedings.

## COUNT ONE – WAR CRIMES

89.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

90.    Defendants' acts were deliberate, willful, intentional, wanton, malicious and oppressive and constitute war crimes.

91.    Defendants' acts took place during a period of armed conflict.

92.    Defendants committed war crimes against Plaintiffs.

93.    Defendants are liable for their conduct that constitutes war crimes.

94.    Defendants' misconduct caused grave and foreseeable injuries to Plaintiffs.

## COUNT TWO – SUMMARY EXECUTIONS

95.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

96.     Defendants' acts were deliberate killings that constitute summary executions. The killings were not carried out under the authority of any country or court.

97.     Defendants are liable for their conduct that constitutes summary executions.

98.     Defendants' misconduct caused grave and foreseeable injuries to Plaintiffs.

## COUNT THREE – ASSAULT AND BATTERY

99.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

100.    Defendants unlawfully intended to and did inflict immediate injury upon Plaintiffs.

101.    Defendants intentionally assaulted, battered, and made other offensive contacts; and aided and abetted the assaulting, battering and offensively contacting of the Plaintiffs.

102.    Plaintiffs did not consent to the offensive contacts.  Plaintiffs feared for their personal safety and felt threatened by Defendants' actions.

103.    Defendants committed the assaults and batteries.

104.    Defendants' acts caused grave and foreseeable damages to Plaintiffs.

## COUNT FOUR – WRONGFUL DEATH

105.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

106.    Defendants' wrongful acts and omissions caused the wrongful deaths of the Estate decedents.

107.    Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to act in the manner that led to the wrongful deaths.

108.    The deaths were the foreseeable result of Defendants' wrongful acts and omissions.

109.    The non-Estate Plaintiffs are persons able to serve in the capacity of personal representatives under Virginia law.

## COUNT FIVE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

111.    Defendants intentionally inflicted severe emotional distress by way of extreme and outrageous conduct on Plaintiffs and their family members.

112.    Defendants set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to inflict emotional distress on Plaintiffs.

113.    Defendants' acts caused grave and foreseeable injuries to Plaintiffs and his family members.

## COUNT SIX – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

114.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

115.    Defendants negligently inflicted severe emotional distress on Plaintiffs.

116.    Defendants breached a duty to Plaintiffs.

117.    Defendants' negligence directly and foreseeably harmed Plaintiffs.

## COUNT SEVEN – NEGLIGENT HIRING, TRAINING AND SUPERVISION

118.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

119.    Defendants acted negligently and directly harmed Plaintiffs by:

(a)    failing to take the appropriate steps in hiring proper personnel to perform services;

(b)    failing to properly screen personnel before their hiring;

(c)    failing to train personnel properly;

(d)    failing to investigate allegations of wrongdoing;

(e)    failing to reprimand for wrongful actions;

(f)    failing to adequately monitor for and stop illegal substance abuse; and

(g)    negligently permitting repeated lawlessness by employees.

120.    Defendants' negligence directly and foreseeably harmed Plaintiffs.

## COUNT EIGHT – TORTIOUS SPOILATION OF EVIDENCE

121.    All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

- 19 -

122.    Defendants had a legal duty to preserve evidence relating to unauthorized uses of force.

123.    Defendants intentionally destroyed that evidence to prevent detection of its wrongdoing.

124.    Defendants' destruction of evidence significantly impaired Plaintiffs' ability to prove certain facts in this action.

125.    Defendants' intent in destroying the evidence was to lessen the risk that they would be found liable by a jury hearing this action.

126.    Defendants' intentional destruction of evidence harmed and continues to harm the Plaintiffs.

**COUNT NINE BROUGHT BY PLAINTIFFS ESTATES OF FADHIL AND MESSRS. JABAR AND AL RUBAE AGAINST DEFENDANT ERIK PRINCE – VIOLATIONS OF RACKEETER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")**

127.    The RICO Plaintiffs are Estates of Suhad Shakir Fadhil, Husam Hasan Jaber, and Hikmat Ali Husein Al Rubae.  The RICO Plaintiffs have standing because they suffered damages to their property.   RICO18 U.S.C. §1964 (c).

128.    The RICO Plaintiffs bring claims under RICO 18 U.S.C. §1962(b) and (c) against Defendant Erik Prince.

129.    Defendant Erik Prince has created an enterprise that has engaged in a series of illegal acts.  Defendant Erik Prince's RICO enterprise (hereinafter "Prince RICO Enterprise") is known to consist of the following entities:  Samarus CO LTD, Prince Group LLC,  Xe Services LLC (formerly EP Investments LLC and d/b/a Blackwater Worldwide), Greystone LTD, Total Intelligence Solutions LLC, all located at 1650 Tysons Boulevard, McLean, VA 22012; and Xe Services LLC, U.S. Training Center, Inc. (formerly Blackwater Lodge and Training Center,

Inc.), GSD Manufacturing LLC (formerly Blackwater Target Systems), Blackwater Security Consulting LLC,  Presidential Airlines, and Raven Development Group LLC, all located at 850 Puddin Ridge Road, Moyock, NC 27958.  All of these entities are affiliated together, and engage in illegal conduct together.

130.    Reasonable discovery likely will establish that the Prince RICO Enterprise includes entities called E&J Holdings LLC and Satelles Solutions, Inc. and others not yet known to Plaintiffs.

131.    The Prince RICO Enterprise is an ongoing criminal enterprise that has been in existence since at least 2003.  The conduct of the Prince RICO Enterprise demonstrates a pattern and practice of repeated illegality designed to create more wealth for Defendant Erik Prince and the Prince RICO Enterprise.

132.    There is no goal that accomplished, would bring this Prince RICO Enterprise to an end.  Rather, as evidenced by a lengthy series of illegal acts – ranging from murder to tax evasion to destruction of evidence – Defendant Erik Prince and his RICO Enterprise will continue its racketeering unless stopped by this Court.

133.    The Prince RICO Enterprise engages in a pattern of murder.  For example, reasonable discovery likely will show that on or about February 16, 2005, the Prince RICO Enterprise committed murder, killing one man.

134.    On or about December 24, 2006, the Prince RICO Enterprise committed murder, killing one man.

135.    On or about February 4, 2007, the Prince RICO Enterprise committed murder, killing a woman.

136.    On or about February 7, 2007, the Prince RICO Enterprise committed murder, killing two men.

137.    On or about July 1, 2007, the Prince RICO Enterprise committed murder, killing a nine-year old boy.

138.    On or about August 13, 2007, the Prince RICO Enterprise committed murder, killing one man.

139.    On or about September 9, 2007, the Prince RICO Enterprise committed murder, killing two men.

140.    On or about September 16, 2007, the Prince RICO Enterprise committed murder, killing seventeen men and women.

141.    On or about May 5, 2009, the Prince RICO Enterprise committed murder, killing one man.

142.    Reasonable discovery likely will establish the Prince RICO Enterprise murdered many others.

143.    The Prince RICO Enterprise engaged, as will be shown by reasonable discovery, in a pattern of kidnapping and assisting in kidnappings.  Reasonable discovery likely will show that the Prince RICO Enterprise used planes identified with tail numbers N962BW, N964BW, and N968BW to conduct three or more kidnappings.

144.    In June 2005, and reasonable discovery likely will show during other time periods as well, the Prince RICO Enterprise engaged in a pattern of destroying audio and videotaped evidence that revealed criminal acts by members of the Enterprise.  The Prince RICO Enterprise's destruction of evidence violated 18 U.S.C. § 1512(3)(c).

145.    In March 2008, May 2009, and reasonable discovery likely will show during other time periods as well, the Prince RICO Enterprise engaged in a scheme to shred and otherwise destroy the documentary evidence memorializing the Enterprise's wide and varied illegal conduct.  The Prince RICO Enterprise's conduct violated 18 U.S.C. § 1512(3)(c).

146.    Reasonable discovery likely will show that on or after September 16, 2007, the Prince RICO Enterprise engaged in the destruction of physical evidence in violation of violates 18 U.S.C. § 1512(3)(c).

147.    During 2005, and reasonable discovery likely will show in subsequent years, the Prince RICO Enterprise engaged in a widespread pattern and practice of smuggling weapons and ammunition, including illegal ammunition.   Reasonable discovery likely will show that the Prince RICO Enterprise violated 18 U.S.C. § 1956 as it funneled the proceeds of these ongoing illegal acts to various offshore accounts established in the names of the various entities within the Prince RICO Enterprise.

148.    Reasonable discovery likely will show that the Prince RICO Enterprise repeatedly violated 18 U.S.C. §§2251, 2251, 2252, or 2260, having young girls provide oral sex to Enterprise members in the "Blackwater Man Camp" in exchange for one American dollar.

149.    The Prince RICO Enterprise obtained and distributed controlled substances (steroids) in 2007, and reasonable discovery likely will show in other time periods as well. Reasonable discovery likely will show that the Prince RICO Enterprise violated 18 U.S.C. §§1952(a)(1) and (3) by traveling in foreign commerce with an intent to carry on these unlawful activities relating to substances controlled by section 102(6) of the Controlled Substances Act.

150.    The Prince RICO Enterprise violated Section 7201 of the Internal Revenue Code by willfully evading the payment of taxes during 2006 and 2007.  The Prince RICO Enterprise

attempted to conceal the existence of the illegal tax evasion scheme from Congress and members of law enforcement. Reasonable discovery likely will show that the Prince RICO Enterprise engaged in a scheme to evade taxes by hiding the proceeds from its illegal racketeering acts in offshore accounts.

151.    As set forth above and as will be shown by reasonable discovery, the Prince RICO Enterprise is involved in murder, weapons smuggling, money laundering, tax evasion, kidnapping, child prostitution, controlled substances, and the destruction of evidence relating to these various criminal schemes.

152.    The Prince RICO Enterprise continues to exist and continues to engage in repeated illegal acts. The Prince RICO Enterprise's racketeering will not stop, as it is immensely profitable for Defendant Erik Prince and the Enterprise he has created.

153.    The continued existence of the well-funded and powerful Prince RICO Enterprise poses a grave and special threat to the well-being of the world.

## DAMAGES

154.    Plaintiffs, acting when necessary through the Estates, are entitled to any and all remedies available to them as a result of the conduct alleged herein, including, but not limited to:

  (a)    compensatory damages for death, physical, mental and economic injuries;

  (b)    punitive damages in an amount sufficient to strip Defendants of all of the revenue and profits earned from their pattern of constant misconduct and callous disregard for human life; and

  (c)    any attorneys' fees and costs permitted by law.

155.    The RICO Plaintiffs seek all remedies available under RICO against RICO Defendant Erik Prince, including, but not limited to, damages, attorneys fees, and a Court Order

that  (1) requires Defendant Prince to divest himself of any direct or indirect interest in the Prince

RICO Enterprise or to dissolve the Prince RICO Enterprise after making due provision for the

rights of innocents, (2) impose reasonable restrictions on Defendant Prince's future activities or

investments, and (3) prohibits Defendant Prince from engaging in any mercenary or private

military business.

_____/s/_____
Susan L. Burke (VA Bar #27769)
William F. Gould (VA Bar #67002)
BURKE O'NEIL LLC
1000 Potomac Street, Suite 150
Washington, DC 20007
202.445.1409
Fax 202.232.5514
sburke@burkeoneil.com

*Attorneys for Plaintiffs*

Date:  June 30, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2009, I caused a copy of Plaintiffs' First Amended Complaint to be emailed via the ECF system to the following:

Peter H. White (Va. No. 32310)
pwhite@mayerbrown.com
Mayer Brown LLP
1909 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300
*Counsel for Defendants*

_____/s/ Susan L. Burke_____
Susan L. Burke (VA Bar #27769)
Counsel for Plaintiffs
BURKE O'NEIL LLC
1000 Potomac Street, Suite 150
Washington, DC 20007
202.445.1409
Fax 202.232.5514
sburke@burkeoneil.com